IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| JAYME BRADLEY and DANIEL BRADLEY, Individually and as Representatives of the Estate of JOHNNY CHARLES BRADLEY | § § § | |
| VS. | § | CIVIL ACTION NO. 2:23cv586 |
| RUSK COUNTY, TEX.; ROBERT KIRKNER; KEITH DORSEY; AND LESLIE PARKER | § § § | |

**ORDER ADOPTING REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE TO DENY QUALIFIED IMMUNITY**

Plaintiffs Jayme and Daniel Bradley, individually and as representatives of the estate of Johnny Bradley, a former pre-trial detainee confined within the Rusk County Jail, filed this wrongful death action, survival action, and civil-rights lawsuit pursuant to 42 U.S.C. § 1983. The cause of action was referred to United States Magistrate Judge Roy S. Payne for findings of fact, conclusions of law, and recommendations for the disposition of the case.

**I. Background**

This case concerns the death of Mr. Johnny Bradley while he was incarcerated inside the Rusk County Jail. Plaintiffs sue (1) Rusk County, Texas, (2) Robert Kirkner, (3) Keith Dorsey, and (4) Leslie Parker. The three individual defendants are or were jailers at the Rusk County Jail at the time of Mr. Bradley's death on the afternoon of July 23, 2023.

On July 21, 2025, Judge Payne issued a Report, (Dkt. #50), recommending that Defendant Kirkner, Dorsey, and Parker's motion for summary judgment, (Dkt. #37)—limited to the issue of qualified immunity—be denied. Specifically, the Magistrate Judge determined that Defendants are not entitled to qualified immunity because, essentially, no reasonable officer under the circumstances of this case could have concluded that purposely failing to conduct required

1

observation checks on Mr. Bradley on the day of his death (despite knowing and admitting that such checks were intended for inmate safety) and then falsifying and/or backlogging the Jail's observation logs to show that they had performed them, was lawful or reasonable. The Magistrate Judge found that Defendants' conduct was not objectively reasonable, and factual issues exist. Defendants filed objections to the Report, (Dkt. #52), and Plaintiffs filed a response, (Dkt. #55).

**II. Defendants' Objections and Plaintiffs' Response**

Defendants' objections mirror arguments within their various pleadings. They lodge essentially three objections: (1) no genuine issue of material fact exists because their failure to perform the face-to-face observation checks is immaterial to the case since Mr. Bradley did not visibly manifest any serious medical need and nothing they could have done would have prevented his death; (2) the fact that they were all required to perform the observations of Mr. Bradley did not place them on notice that Mr. Bradley might experience a medical emergency sufficient for deliberate indifference; and (3) their conduct amounted to nothing more than failing to follow jail procedures, which is not a constitutional violation.

Plaintiffs argue (Dkt. #55) in response that Defendants' declarations in their objections are not forthright. In short, Plaintiffs maintain that Defendants' objections should be rejected because "[t]he core issue is not that Defendants merely failed to abide by a jail rule, it is that they violated Mr. Bradley's constitutional right to medical care and reasonable safety." Plaintiffs vehemently object to Defendants' characterization that there was nothing they could have done to prevent his death—arguing that there is no evidence of this and that Defendants failed to provide a single physician to offer an opinion of Mr. Bradley's survivability. They also maintain that Defendants are not entitled to qualified immunity because they

"consciously, purposefully, and knowingly refused to perform the required face-to-face observations of Mr. Bradley," which is evidence a jury could find as both egregious and evincing a wanton disregard for Mr. Bradley's health and safety.

### III. Discussion and Analysis

The Court reviews the findings and conclusions of the Magistrate Judge *de novo* only if a party objects within fourteen days of the Report and Recommendation. 28 U.S.C. § 636(b)(1). In conducting a *de novo* review, the Court examines the entire record and makes an independent assessment under the law. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superseded on other grounds by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten days to fourteen days). Defendants' objections will be overruled; the Magistrate Judge correctly determined that Defendants are not entitled to qualified immunity because their conduct was not objectively reasonable.

In this case, Plaintiffs presented evidence indicating that (1) Mr. Bradley was housed in a segregation cell that required more frequent monitoring for safety; (2) despite knowing Mr. Bradley was housed in a segregated cell that required more monitoring, all three jailer Defendants did not perform face-to-face observations of Mr. Bradley on the day of his death and falsified and/or purposely backlogged the jail observation logs to show that they had completed them; and (3) all three Defendants admitted to recognizing that the purpose of these observation checks was to ensure inmate health and safety.

A reasonable jury could determine that Defendants' conduct was egregious and evinced a wanton disregard for Mr. Bradley's health and safety. Defendants' objections identify no error in the Magistrate Judge's Report and do not require a lengthy discussion. It is well-settled that the Constitution guarantees pretrial detainees a right "not to have their serious medical needs met with

deliberate indifference on the part of the confining officials." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (quoting *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001)). Likewise, jailers have a constitutional duty to provide pre-trial detainees with reasonable safety inside their facility—protecting them from harm, for example, from known suicidal tendencies, from fellow inmates, or from medical conditions. *See Hare v. City of Corinth, Miss.*, 74 F.3d 633, 641 (5th Cir. 1996) (en banc); *see also Zara v. Strain*, 458 F. App'x 393, 393 (5th Cir. 2012) ("The Due Process Clause of the Fourteenth Amendment, which—like the Eighth Amendment—places a duty on the State to protect against harm to persons in its confinement.").

A plaintiff must demonstrate that (1) the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists *and* (2) the official actually drew that inference. *See Carmona v. City of Brownville*, 126 F.4th 1091, 1097 (5th Cir. 2025); *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

<u>1. The Intentional Failure to Perform the Observation Checks is Material</u>

First, Defendants' intentional conduct of failing to perform the required face-to-face observation checks on Mr. Bradley—and then subsequently falsifying or backlogging the observation logs to show that they had actually performed them—is indeed material to this case because such conduct evinces an intentional disregard for Mr. Bradley's health and safety.

Egregious, intentional conduct is the very fabric of a viable deliberate indifference claim. *See Zaunbrecher v. Gaudin*, 641 F. App'x 340, 344 (5th Cir. 2016) (explaining that deliberate indifference requires a showing of "egregious intentional conduct"); *see also Domino*, 239 F.3d at 755 (holding that a plaintiff must show that officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince

4

a wanton disregard for any serious medical needs."); *Calton v. Patel*, 2024 WL 1826244, at *1 (5th Cir. 2024) ("… displayed the type of egregious intentional conduct that would amount to deliberate indifference.").

Here, the evidence suggests that Defendants purposefully failing to observe Mr. Bradley on the day of his death, coupled with their admissions in their depositions, demonstrates an egregious intentional act that a reasonable jury could find constituted deliberate indifference to a substantial risk of harm. *See Garrett v. Lumpkin*, 96 F.4th 896, 900-01 (5th Cir. 2024) (explaining that inmates need only show that there is a substantial risk of serious harm under the Eighth Amendment).

Moreover, Defendants' contentions that Mr. Bradley did not visibly manifest any serious medical need and that there was nothing they could have done to save Mr. Bradley, as they insist his death stemmed from natural causes, remain preposterous. Defendants' argument seems to be that even if they had looked inside Mr. Bradley's cell as required, they would not have noticed anything. This is pure speculation—and misidentifies the legal issue, which is deliberate indifference to a detainee's right to health and reasonable safety inside a jail and not whether Defendants could have medically saved him. And Plaintiffs correctly argue that Defendants have provided no evidence to substantiate that there was nothing they could do to prevent his death.

The Fifth Circuit in *Garrett* recently reiterated the crucial principle that an inmate does not have to wait for death or substantial injury to occur before demonstrating that unconstitutional jail or prison condition exists. *See Garrett*, 96 F.4th 896 at 900. The same logic can be applied here: An inmate does not have to wait for his death before demonstrating that jail officials acted with deliberate indifference to his rights to medical care and reasonable safety. *See Ford v. Anderson Cnty., Tex.*, 102 F.4th 292, 308 n.4 (5th Cir. 2024) (per curiam) ("[A] patient does not need to be

experiencing an acute medical crisis requiring emergency treatment to be facing a substantial risk of serious harm—suffering from a known chronic issue that requiring ongoing or long-term treatment may also suffice."). This objection is without merit.

### 2. Evidence Indicates Defendants were on Notice of a Substantial Risk of Harm

Second, though Defendants insist that they were not on notice of a substantial risk of harm to Mr. Bradley, the summary judgment evidence suggests otherwise. As the Magistrate Judge determined, all three Defendants admitted that they understood that the purpose of the face-to-face observations for inmates in the segregated cells was to ensure inmate safety and well-being.

A reasonable jury could find that Mr. Bradley's placement in a segregated cell that required more frequent monitoring or observation—once again, a fact Defendants recognize in their depositions—placed them on notice that Mr. Bradley might experience a medical emergency. Moreover, given that the evidence indicates that all three Defendants falsified entries in the observation logs, a reasonable jury could determine that the Defendants knew the observation checks were necessary for inmate safety. *See Ford*, 102 F.4th at 313-14 ("[B]ecause she was placed on medical observation, the jailers were on notice that Newsome might be at risk of experiencing a medical emergency."); *see also Jacobs v. West Feliciana Sheriff's Dept.*, 228 F.3d 388, 398 (5th Cir. 2000) ("Given [the officer's] … disregard for precautions he knew should be taken, we conclude that there is enough evidence in this record from which a jury could find subjective deliberate indifference.").

The Fifth Circuit, in *Ford*, focused heavily on the fact that Newsome was placed on medical observation and placed in a holding cell where she could be observed and therefore jailers were on notice that the inmate might experience a medical emergency. *Id*. Here, too, Mr. Bradley was placed in a segregation cell that required more frequent monitoring—similar to the observation

cell described in *Ford*—and, therefore, a reasonable jury could find that Defendants were on notice that Mr. Bradley might experience a medical emergency. *Ford*, 102 F.4th at 313-14 (denying qualified immunity to jailers "because Newsome was on medical observation, a reasonable jury could infer that Strong and Jones knew that Newsome faced a substantial risk of serious harm if they were unresponsive to her medical needs.").

Defendants' knowledge that the observation checks were necessary for inmate safety necessarily renders their conduct of intentionally failing to perform them (coupled with their false representations that they completed them) all the more indifferent to a substantial risk of harm. *See Patrick v. Martin*, 2020 WL 4040969, at *18-19 (N.D. Tex. July 16, 2020) (finding that officers acted with deliberate indifference to an inmate's safety—and such officers were not entitled to qualified immunity—because they knew the inmate was housed in a pod housing high-risk inmates but engaged in (1) a practice of "pencil-whipping cell search logs," or (2) "did not open cell doors during cell searches, despite indicating he did so on the logs.").

Defendants emphasize that deliberate indifference is not a "should have known" standard. They argue that "Mr. Bradley was not on medical observation" and that even if the observation requirement should have put them on notice that Mr. Bradley might experience a medical emergency, such does not show deliberate indifference, (Dkt. #52, pg. 5).

Once again, Defendants myopically highlight a general legal standard and omit much of the summary judgment evidence. Indeed, it is well-settled that the failure to alleviate a significant risk that a jail or prison official should have known—but did not—is insufficient to demonstrate deliberate indifference. *See Thompson v. Tex. Dep. Crim. Just.*, 67 F.4th 275, 282-83 (5th Cir. 2023).

7

But, here, the evidence suggests that all three Defendants *did* know that Mr. Bradley—or any inmate housed in one of the segregated cells requiring additional monitoring—might experience a medical emergency because those inmates required more monitoring and observation. Though Defendants quibble that Mr. Bradley was not on official medical observation, once again, Mr. Bradley was placed in a segregation cell that required more frequent monitoring—similar to the observation cell described in *Ford*. Therefore, the evidence indicates, and a reasonable jury could find, that Defendants were on notice that Mr. Bradley might experience a medical emergency. *See Ford*, 102 F.4th at 313-14 (holding that "because Newsome was on medical observation, a reasonable jury could infer that Strong and Jones knew that Newsome faced a substantial risk of serious harm if they were unresponsive to her medical needs."); *see also Butler v. Richland Cnty.*, 2025 WL 892576, at *5 (D. S.C. Mar. 24, 2025) (finding that the record contained facts creating a material dispute concerning the subjective knowledge of the officer, who "did not check on Lawson every five minutes in accordance with ADGDC policy, he allegedly fabricated the breakfast log prior to Lason being served breakfast, and he left his suicide watch post to serve breakfast."). At this stage, Plaintiffs do not need to prove deliberate indifference, as they only have the burden to show genuine issues of material fact. These objections identify no error in the Magistrate Judge's Report.

### 3. Conduct Evincing More than Mere Oversight or Failure to Follow Jail Rules

Finally, Defendants repeatedly argue that the mere failure to follow jail rules does not amount to deliberate indifference or a constitutional violation. As the Magistrate Judge explained, generally, a jail official's *mere* failure to follow a jail's rules, procedures, or regulations cannot be characterized as deliberate indifference or a constitutional violation. *See Myers v. Kleven*, 97 F.3d 91, 94 (5th Cir. 1996) ("Our case law is clear, however, that a prison official's failure to follow

8

the prison's own policies, procedures or regulations does not constitute a violation of a due process *if constitutional minima are nevertheless met*.") (emphasis added).

The Magistrate Judge correctly rejected this argument. As the Report outlined, the evidence indicates that Defendants' conduct of repeatedly and intentionally failing to observe Mr. Bradley on the afternoon of his death—and then falsely representing that they had done so on the logs—was not simply mere failure or "oversight" or even gross negligence. *See Jacobs*, 228 F.3d at 395 (establishing deliberate indifference requires more than "mere oversight.").

Rather, as the Magistrate Judge found, Plaintiffs presented evidence suggesting that (1) Mr. Bradley was housed in a segregation cell that required more frequent observation; (2) despite knowing he was housed in segregation requiring more observation, all three Defendants did not perform the face-to-face observations on Mr. Bradley and falsified and/or purposely backlogged their observation checks to show that they had; and (3) all three Defendants admitted to recognizing that the purpose of these checks was to ensure inmate health and safety. A reasonable jury could find that this intentional conduct was far more than mere oversight or Defendants failing to perform their job duties. *See Shepard v. Hansford County,* 110 F. Supp.3d 696, 710-711 (N.D. Tex. May 22, 2015) ("The evidence suggests that [Defendant] did more than simply fail to follow prison rules—she acted with deliberate indifference by intentionally prioritizing her other duties over her suicide watch duties and by failing to take steps to protect Lacy from harm.").

Crucially, Defendants admitted that they falsely represented entries on the observation logs, prioritized other duties or concerns, and Defendants Kirkner and Dorsey explained that they falsified entries before. Defendant Kirkner was charged with falsifying the logs. Plaintiffs presented evidence indicating conduct far more than mere negligence, oversight, or the failure to follow jail rules. Defendants' repeated argument on this issue does not change the facts presented.

9

With respect to Defendants' again arguing that Mr. Bradley did not commit suicide, the Magistrate Judge's conclusion bears repeating: This is a distinction without a difference. Regardless of whether an inmate commits suicide, is harmed by another inmate, or suffers from cardiac arrest inside his cell, a jailer—like Defendants Parker, Kirkner, and Dorsey—has a duty to take reasonable steps to protect the inmate from harm while he is detained. Jailers have a duty or obligation to keep inmates reasonably safe—not merely to prevent a suicide. *See Alexander v. Phillip R. Taft Psy D. and Assoc., P.L.L.C*, 143 F.4th 569, 585 (5th Cir. 2025) ("The State must assume some responsibility for a pretrial detainee's safety and general well[-]being.") (internal citation and brackets omitted).

### 4. Individual Defendants' and Qualified Immunity

Defendants maintain that the Magistrate Judge failed to address qualified immunity for each Defendant separately. Though Defendants do not elaborate further, the Court notes that when multiple officials are named as defendants, courts must assess each defendants' conduct "independently to determine whether he is entitled to qualified immunity." *See Sanders v. Gibson*, 2025 WL 1029440, at *2 (5th Cir. Apr. 7, 2025) (quoting *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022)).

Here, an individual assessment of each Defendants' entitlement to qualified immunity results in the same conclusion. Defendants are not entitled to qualified immunity—whether analyzed collectively or separately. Their conduct was objectively unreasonable.

With respect to Defendant Parker, the summary judgment evidence indicates that she purposely failed to perform a face-to-face observation of Mr. Bradley during her last "check" of the day—admitting that it was the end of her shift and she had much to do at home the next day., (Dkt. #48-11, pg. 5-6; 9-10). Defendant Parker also admitted that she falsified multiple of her

10

observation-check entries of on the day Mr. Bradley died, further conceding that her checks on that day were essentially "nothing," which a reasonable jury could find confirms her knowledge that the observation checks were intended for inmate safety. *Id*. at pg. 16. As the Magistrate Judge correctly determined, such purposeful conduct, if proven, is far more than mere failure to follow jail rules and evinces a wanton disregard for Mr. Bradley's health and safety.

The same holds true for Defendant Kirkner. Specifically, the evidence suggests—again—that he intentionally failed to perform face-to-face observations of Mr. Bradley on the day of his death and falsified the jail observation logs to show that he had completed them, (Dkt. #48-8, pg. 3-4; 9; 10; 13) Defendant Kirkner admitted in that he did not complete the observations because he was "preoccupied with other things," and recognized that the purpose of the observations was to ensure that an inmate is "alive" or breathing. *Id*. at pg. 10; *see also* Dkt. #48-5, pg. 108. A reasonable jury could find that this demonstrates his knowledge of a substantial risk of harm. The evidence also indicates that Kirkner was charged for tampering with a government record stemming from his falsification of the jail logs. *Id*. at pg. 4-5. Defendant Kirkner's conduct, if proven, is similarly far more than simply failing to follow rules and evinces a wanton disregard for Mr. Bradley's health and safety.

Finally, turning to Defendant Dorsey, Dorsey admitted that he conducted observation "checks" on Mr. Bradley's hallway on the day of his death—but never looked inside Mr. Bradley's cell or opened his door because he assumed "everything's always ok." He further admitted that the purpose of the observation checks was to ensure the inmate's well-being, that he documented on the logs that he performed them on the day of Mr. Bradley's death, and that he previously falsified the logs "on occasion," (Dkt. #48-10, pg. 5-6; 14). A reasonable jury could find that Dorsey's conduct, if proven, demonstrates a wanton disregard for Mr. Bradley's health and safety.

11

Even when analyzed separately, none of the individual Defendants in this case are entitled to qualified immunity because their conduct was not objectively reasonable. *See Taylor v. Riojas*, 592 U.S. 7, 8-9 (2020) (denying qualified immunity for confining an inmate in "shockingly unsanitary" cells for six days because no reasonable correctional officer could have believed it was constitutionally permissible to house inmates under such conditions).

## IV. Conclusion

Defendants are not entitled to qualified immunity. The summary judgment evidence indicates that all three individual Defendants purposely failed to perform the face-to-face observations of Mr. Bradley on the day of his death on July 23, 2023, while knowing he was housed in a segregation cell requiring more frequent observation—even though they all represented that they had performed the observation checks correctly and despite recognizing the importance of the observation checks for inmate health and safety. If proven, a reasonable jury could find these actions egregious and demonstrate a wanton disregard for Mr. Bradley's rights.

As the Magistrate Judge reasoned, perhaps missing one or two of the required observation checks or performing them minutes late or early is not an extreme or egregious circumstance. However, a reasonable jury could determine, here, that intentionally missing them on a single afternoon and then lying about completing them properly is particularly offensive and shocking. Confronted by the particularly egregious facts of this case, any reasonable jailer would have realized that such intentional and repeated conduct violated the Constitution.

The Court has conducted a careful *de novo* review of the record and the Magistrate Judge's proposed findings and recommendations. *See* 28 U.S.C. §636(b)(1) (District Judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Upon such *de novo* review, the Court has

determined that the Report of the United States Magistrate Judge is correct, and Defendants' objections are without merit. Accordingly, it is

    **ORDERED** that the Report and Recommendation of the United States Magistrate Judge, (Dkt. #50), is **ADOPTED** as the opinion of the Court. Defendants' objections, (Dkt. #52), are **OVERRULED**. It is also

    **ORDERED** that Defendants' motion for summary judgment, limited to the issue of qualified immunity, (Dkt. #37), is **DENIED**.

    **So ORDERED and SIGNED this 30th day of September, 2025.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE